UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cr-20051-JEM

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

ALFRED DAVIS,

    *Defendant*.

_____/

## DEFENDANT'S MOTION FOR ACQUITTAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 29

Defendant, Alfred Davis, renews his previous motions pursuant to Federal Rule of Criminal Procedure 29, and asks this Court to enter a judgment of acquittal on count I of the Indictment. The evidence is insufficient to convict Mr. Davis of violating 18 U.S.C. § 1029(a)(1), because the Government failed to prove: (i) "intent to defraud or deceive" by obtaining "money, goods, services, or any other thing of value," or use of a counterfeit driver's license to obtain "money, goods, services, or any other thing of value"; and (ii) identity. Defendant incorporates the arguments made at the close of the government's case, at the close of the evidence and those presented in his Motion for New Trial, filed contemporaneously herewith.

**Background.**

The indictment charged that Mr. Davis used a counterfeit Florida driver's license in violation of 18 U.S.C. § 1029(a)(1). DE11. In accord with the Eleventh Circuit's pattern jury instructions, this Court instructed the jury that, to convict Mr. Davis, it had to find that he (1) knowingly used a counterfeit access device, (2) knew the device was counterfeit and acted with the intent to defraud, and (3) his conduct affected interstate commerce. *See* 11th Cir. Pattern Jury Instructions,

1

§ 041.1.

At trial, the government attempted to prove that Mr. Davis violated § 1029(a)(1) with evidence that on April 13, 2023, he used a counterfeit access device in order to obtain approval to lease Unit 2004 at the 400 Sunny Isles Blvd, Sunny Isles, Florida (400 Sunny Isles). Over objection, the government introduced evidence of two previous certified convictions dating back to 2004 and 2010, which the government never connected to the defendant.

At trial, the government called three witnesses: Jeff Jean-Pierre, a manager at the property management company for 400 Sunny Isles; Jason Brown, the owner of Brown's background checks; and special agent Adam Weisenstine. At no point did any of the witnesses identify Mr. Davis in court.

There was no evidence of intent to defraud presented. The government failed to establish that the defendant intended to take money or property from the victim. In fact, the government conceded in their opening that they were not arguing that rents were not paid. Witness Jean-Pierre testified that he does not collect rents, that the owner of the unit was Marco Chiquie, and that Jean-Pierre had no knowledge of rents not being paid.

Jason Brown testified that the name that was checked on a background check was Rob Lesperance, not Rod Lesperance. He also testified that no social security number was used to run the background check and that the results were not accurate, as the wrong name was input into the system. In addition, there was no credit authorization signed on file by "Rob Lesperance" authorizing the running of the background check.

**Applicable Legal Standard**

Under Rule 29, this Court must apply the constitutional standard for sufficiency of the evidence articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979). While the evidence is construed in the light favorable to the verdict, if the evidence on any essential element is in equipoise, this

2

Court must acquit. *Cosby v. Jones*, 682 F.2d 1373, 1383 (11th Cir. 1982).

**I. The Government failed to prove a violation of § 1029(a)(1), because it did not prove intent to defraud, nor use of an access device in violation of 18 U.S.C. § 1029(a)(1).**

Even if the Government's evidence at trial is credited, it is legally insufficient because there was no evidence of intent to defraud, nor of use of a counterfeit driver's license in violation of § 1029(a)(1).

A person violates 18 U.S.C. § 1029(a)(1), if "with intent to defraud," he "uses" one or more "counterfeit access devices." For purposes of this offense (and all other similar offenses set forth at §§ 1029(a)(2)-(10), a counterfeit "access device" is a counterfeit personal identification number "that can be used . . . to obtain money, goods, services, or any other thing of value." 18 U.S.C. § 1029(e)(1). Hence, the use of a counterfeit driver's license only qualifies as an "access device" under the statute if it can be used to "obtain money, goods, services, or any other thing of value."

The Indictment charged that on or about April 13, 2023, Mr. Davis "did knowingly, and with intent to defraud, use a counterfeit access device, that is, a counterfeit Florida's driver's license." DE 11 at 1. The Indictment did not charge an "attempt" to use a counterfeit driver's license. Reliance on such a theory now would result in a constructive amendment of the Indictment. Attempt is a separate offense. *See* 18 U.S.C. § 2019(b)(1). Thus, here, the government had to prove that Mr. Davis *intended* to defraud, and *actually used* a counterfeit driver's license, to "obtain money, goods, services, or any other thing of value."

This Court's jury instructions told the jury: "To 'use' includes any effort to obtain money, goods, services, or any other thing of value." The jury instructions further instructed: "To act 'with intent to defraud' means to act with intent to deceive or cheat, usually for personal financial gain or to cause financial loss to someone else."

The Government elicited testimony from Mr. Jean-Pierre that he was the manager at the

3

property management office at 400 Sunny Isles. He testified about the location of the building, the amenities at the building and the Government elicited testimony that if the person was not approved by the Board, they would not be able to enjoy the amenities of the building such as pool, security, and tennis courts. In opening and closing argument, the government conceded that there was no evidence that Mr. Davis failed to pay his rent. Thus, the government was aware that there was *no financial loss* to the owner of the unit, which likely explains why it did not call the owner of the unit to the stand. Instead, it elicited testimony from Mr. Jean-Pierre to prove that once, thanks to his counterfeit driver's license, Mr. Davis became an illegitimate resident at 400 Sunny Isles, he could use the building's amenities, such as its pool, or tennis court. But this evidence is insufficient to prove intent to defraud, or unlawful use: because Mr. Davis paid his rent, he also paid for access to the building's amenities. Under the government's "use of amenities" theory in Mr. Davis' case, an under-age teenager who used a counterfeit driver's license to get access to a trendy South Beach night club, and paid the entrance fee, would be committing a federal offense, punishable by up to 20 years in prison, on the theory that the teenager obtained illegitimate use of the night club's amenities.

Moreover, evidence that Mr. Davis had access to the building's amenities did not establish that he *intended* to fraudulently obtain, or *used* a counterfeit driver's license to obtain, "money, goods, services, or any other thing of value." The evidence established neither the *mens rea* nor the *actus rea* of § 1029(a)(1). At most, the evidence established that Mr. Davis had an opportunity to "free ride" on the building's amenities – but the caselaw makes clear that such evidence of "free riding" is insufficient to establish a § 1029(a)(1) violation.

In *United States v. Morris*, 81 F.3d 131 (11th Cir. 1996), the Eleventh Circuit *reversed* a conviction under 18 U.S.C. § 1029(a)(4), where the government's theory was that the defendant violated this statute by making a "tumbling" device which enabled a caller to make untraceable

4

and free cellular calls. After holding that the tumbling device was not "device-making equipment" for purposes of § 1029(a)(4), *Morris* added:

> Moreover, even if the government had chosen to prosecute Morris under another section of § 1029, we are not convinced that the statute as then written can be interpreted to reach the admittedly illegitimate conduct of free riding on a cellular phone system.

*Id*. at 134 (citing approvingly *United States v. Brady*, 13 F.3d 334, 340 (10th Cir. 1993)). *Morris* noted that in 1994 Congress amended § 1029(a)(5) to criminalize tumbling activity. *Id*. at 133. However, this amendment to subsection (a)(5) did not modify the statute at issue here, § 1029(a)(1). And, as *Morris* recognized, the very fact that Congress amended the statute to criminalize a person's illegitimate free riding on cellular networks provides support for a "narrower reading of § 1029." *Id*. Prior to the amendment Section 1029 did not, and today, outside the cellular telephone context, does not, reach mere free riding on a service.

In *United States v. McNutt*, the Tenth Circuit similarly discussed *Brady* approvingly, and rejected the government's argument that § 1029 applied to a defendant who used a descrambler to free ride on satellite television transmissions. 13 F.3d 334, 563-564 (10th Cir. 1990) (citing *Brady* 13 F.3d at 338). *McNutt* determined that although the operators of satellite television services suffered economic losses from the revenue foregone due to the descramblers, the use of the devices did not debit legitimate subscribers, and no additional charges accrued. *Id*. *McNutt* determined that § 1029 focuses on "monetary losses resulting from discrete transactions reflected in the company's accounting records." *Id*. (citation omitted). *McNutt* held that free riding on television programming did not establish a § 1029 violation. *Id*.

The view that § 1029(a)(1) requires proof of actual monetary losses is consistent with the statute's interstate nexus requirement, which provides that committing the conduct described in subsections (a)(1) – (a)(10) constitutes a federal crime "if the offense affects interstate or foreign

5

commerce." 18 U.S.C. § 1029(a). An effect on interstate commerce is established by evidence of *commercial activity* affected by a person's conduct. *See*, *e.g.*, *United States v. Ransfer*, 749 F.3d 914, 936 (11th Cir. 2014) (Hobbs Act robbery of $300 sufficed to show affect on interstate commerce, because the victim-stores "regularly purchased goods that traveled in interstate commerce").

Mr. Davis recognizes that in *Obasohan v. U.S. Atty. Gen.*, in the context of determining whether a prior § 1029(a)(1) conviction counted for deportation purposes as an "aggravated felony," the Eleventh Circuit stated that this statute "has no minimum loss associated with it." 479 F.3d 785, 789 n. 7 (11th Cir. 2007). However, the Supreme Court explicitly abrogated *Obasohan*'s "definitional approach" to the deportation issue in *Nijhawan v. Holder*, 557 U.S. 29, 33 (2009). Moreover, because the defendant in *Obasohan* pled guilty to the § 1029(a)(1) charge, *id*. at 785, he did not contest whether he had the requisite intent to violate this statute, and *Obasohan* had no occasion to address this issue. (Such an intent could have been inferred from the fact that the defendant made "fraudulent use of other credit cards which had caused losses in excess of $37,000 to three financial institutions." *Id*. at 786).

Finally, the one-sentence footnote in *Obasohan* which stated that § 1029(a)(1) "has no minimum loss associated with it" may have overlooked the definition of "access device" in 18 U.S.C. § 1029(e)(1). This definition requires proof of the use of such a device "to obtain money, goods, services, or any other thing of value." Section 1029(e)(1)'s definition of "access device" applies to each subsection of § 1029, including § 1029(a)(1). *See*, *e.g.*, *United States v. Bruce*, 531 F.Supp.2d 983, 989 (N.D. Ill. 2008) (dismissing indictment because it failed to allege the type of account contemplated by § 1029(e)(1), an essential element of § 1029(a)(1)). Thus, the statute requires proof of intent to use an access device "that can be used . . . to obtain money, goods, services, or any other thing of value" – it does require proof of intent to cause an ascertainable loss.

Even if arguendo, the law allowed for the Government to prove loss to the building by having

6

a preparty management representative testify about the building's amenities, the amenities are owned by the Unit owners, not the property management company. Furthermore, there was no testimony that Mr. Davis used any of the amenities – that he obtained, in the words of this Court's jury instructions in this case, any "personal financial gain."

In sum, the evidence was insufficient to convict, because it did not establish intent to take money or property from someone, or use of a device to take money or property from someone.

**II. No Witness Identified the Defendant at trial.**

It is well-settled that the prosecution's failure to adequately identify the defendant as the person who committed the alleged criminal violation is a basis for vacating a conviction based on insufficient evidence. *See*, *e.g.*, *United States v. Doe*, 664 F.2d 546, 549 (5th Cir. 1981) (vacating conviction based on government agents' inability to identify the defendant; "the government failed to meet an essential element of proof of every crime: that the defendant was the person who committed it.").

Here, no Government witness identified Mr. Davis in court. While Mr. Jean-Pierre testified he met Rod Lesperance, he never identified Mr. Davis as the person he knew as Rod Lesperance. Furthermore, Mr. Brown has never seen or heard of Mr. Davis. Finally, the special agent never identified Mr. Davis in court. He did testify that when he searched for Mr. Davis on an unrelated investigation (which was objected to), he asked the management office for a copy of the documents relating to Unit 2004. Once he saw the driver's license in the file, he stated he recognized the person in that photograph to be Alfred Davis. His ability to recognize him was based on his seeing a photograph of Alfred Davis in the past. However, the agent also stated that he had never met Alfred Davis in person before seeing the counterfeit driver's license and that he has only met him one time in an elevator after this investigation.

## Conclusion

For the foregoing reasons, and those provided in court, this Court should grant Defendant's Rule 29 motion.

Respectfully submitted,

BOZANIC LAW, P.A.
17100 Royal Palm Blvd., Suite 1
Weston, FL 33326
Telephone: 954.920.9750
Facsimile: 954.400.0335
E-Mail: Zeljka@bozaniclaw.com

/s/Zeljka Bozanic
By:_____
Zeljka Bozanic
Florida Bar No. 23707

## CERTIFICATE OF SERVICE

I HEREBY certify that on May 27, 2024, undersigned counsel electronically filed foregoing document with the Clerk of Courts using CM/ECF which will send notification of such filing to all counsel of record.

/s/Zeljka Bozanic
By:_____
Zeljka Bozanic
