UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-CR-20051-JEM

**UNITED STATES OF AMERICA**

       **Plaintiff,**

v.

**ALFRED LENORIS DAVIS,**

       **Defendant.**

_____/

**DEFENDANT'S REPLY TO UNITED STATES' RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTION FOR ACQUITTAL AND MOTION FOR A NEW TRIAL**

Defendant, Alfred Leonoris Davis, hereby files a Reply to the United States' response in Opposition to the Defendant's Motion for Acquittal and Motion for new Trial [DE 59]. The Defendant was convicted by Jury on May 15, 2024. The Court reserved ruling on Defendant's Second Motion for Judgment of Acquittal.

1. **The government fails to address the cases cited in Mr. Davis' motion for acquittal interpreting the statute of conviction, 18 U.S.C. § 1029(a)(1), and instead erroneously invites this Court to import the evidentiary standards of other statutes into § 1029(a)(1).**

In his Motion for Acquittal, Mr. Davis argued that evidence that he had access to the amenities at 400 Sunny Isles did not suffice to establish that he intended to fraudulently obtain, or used a counterfeit driver's license to obtain, "money, goods, services or any other thing of value," as required to establish a violation of 18 U.S.C. § 1029(a)(1). DE55:3-7. In support of this argument, Mr. Davis cited a number of Court of Appeals cases, including

1

*United States v. Morris*, 81 F.3d 131 (11th Cir. 1996), to establish that this statute "requires proof of actual monetary losses." DE55:5.

Puzzlingly, the government's response fails to address any of the § 1029(a)(1) cases discussed in Mr. Davis' motion. Instead, the government cites cases involving wire fraud, or bank fraud – *none* of the cases cited in the government's response involve a conviction under § 1029(a)(1). DE59. In other words, the government is inviting this Court to import the standards for wire fraud or bank fraud offenses into § 1029(a)(1). This invitation – for which the government musters no support in the caselaw – must be rejected.

In the wire and bank fraud cases cited by the government, the courts analyzed whether a misrepresentation was "material" to the transaction, and therefore criminally fraudulent. In *United States v. Waters*, the Eleventh Circuit rejected the defendant's claim that his deceptive documents relating to IRS tax liens "were not material to the proposed loan agreement." 937 F.3d 1344, 1350 (11th Cir. 2019). In *United States v. Watkins*, the Eleventh Circuit rejected the defendant's argument that "it matters not" that he concealed from the bank that he was the true recipient of the loan, because "Banks have a clear interest in knowing to whom the are loaning money and for what purpose. Indeed, such information goes to the very nature of the 'bargain' itself." 42 F.4th 1278, 1286-87 (11th Cir. 2022). As in *Waters*, *Watkins* was addressing the issue of materiality. In *United States v. Bradley*, after noting that the offense of conviction "require[d] proof of a material misrepresentation," the Eleventh Circuit found that evidence proved that the owners of a pharmaceutical wholesaler knew that the buyers of their recycled blood-derivatives would not have purchased their products at full price had they known that the blood-derivatives were recycled. 644 F.3d 1213, 1238-39, 1242 (11th Cir. 2011). Thus, as in *Waters* and

2

*Watkins*, *Bradley* resolved the issue of materiality.  Finally, in *United States v. Takhalov*, 827 F.3d 1307, 1320-23 (11th Cir. 2016), the Eleventh Circuit reversed convictions because the jury instructions misled the jury on the issue of materiality.  In sum, each of the above cases, cited by the government, DE59:5-7, involved the question of materiality.

But § 1029(a)(1) does not have a materiality element, and this Court's jury instructions in this case rightly did not address the issue of materiality.  Rather, as Mr. Davis noted in his Motion, the jury instructions told the jury: "To 'use' includes any effort to obtain money, goods, or services, or any other thing of value." DE55:3.  Unlike the fraud statutes discussed above, which police the boundary between criminal and non-criminal misrepresentations by determining whether or not the misstatement was "material" to the transaction, the cases applying § 1029(a) require a showing of "actual monetary loss" to establish the criminal "intent to defraud."  DE55:4-5.  Further, as Mr. Davis added, the view that § 1029(a)(1) requires proof of actual monetary loss is consistent with the statute's interstate commerce requirement, which requires evidence of *commercial activity* affected by a person's conduct.  DE55:5-6.

The government cites the statement in *Bradley* that a defendant's intent to commit a fraudulent scheme is gauged by "whether the defendant attempted to obtain, by deceptive means, something to which he was not entitled."  DE:5 (quoting *Bradley*, 644 F.3d at 1240).  The government also cites the statement in *Takhalov* that a person is deceitful when he "lies about the nature of the bargain itself."  DE55:5 (quoting *Takhalov*, 827 F.3d at 1313).  (*Takhalov* reversed a fraud conviction because the jury should have been instructed that it should acquit if the defendants "tricked the victims" but the victims nevertheless got "exactly what they agreed to pay," *i.e.*, suffered no loss.  827 F.3d at 1310).  But these

3

statements about the nature of an intent to defraud must be read in the context of the fraud offenses in these cases, which required proof of materiality. The "intent to defraud" was subject to proof that the lying or tricking involved a "material fact." *Takhalov*, 827 F.3d at 1316-17.

In the context of § 1029(a)(1) access device fraud, however, the proof of the element that the defendant "acted with the intent to defraud or deceive" is not subject to proof of materiality, but required proof of "use" of a counterfeit device "to obtain money, goods, services, or any other thing of value" – as this Court instructed the jury.

It bears noting that even if the government were correct that the materiality element of other fraud offenses could be imported into § 1029(a)(1), in this case it would clearly lose. The government put on no evidence that anyone at 400 Sunny Isles *relied* on the counterfeit driver's license, and would not have rented a united to Mr. Davis had it known that his driver's license was counterfeit. The government asserts that "the landlord did not intend to grant occupancy to a fictitious person against whom he would not have no recourse were rent not paid or his property damaged." DE59:6. But this assertion is not accompanied by a citation to the trial record, and, in fact, there is no record support for it. The government notes that "400 Sunny Isles had a background check process." DE59:7. But the rental of an apartment is not like the purchase of a firearm, for which the failure of a background check makes one categorically ineligible to purchase a firearm. *See* 18 U.S.C. § 922. It is not inherently material to the rental process. And, in any event, again, materiality is not the test for § 1029(a)(1) liability. The test was actual monetary loss. *See United States v. McNutt*, 908 F.2d 561, 563 (10th Cir. 1990) (faulting the government for failing to prove "actual monetary losses" resulting from the transactions, and reversing §

4

1029(a)(1) conviction).[1]  The government failed to prove that occupancy of a unit at 400 Sunny Isles resulted in an actual monetary loss.  The § 1029(a)(1) conviction should be vacated.

### 2. Identity

The government continues to confuse the issue of identification in Court and cites circumstantial evidence cases in which the jury could rely on video surveillance, when deciding whether the defendant was the perpetrator.

One of the basic principles of trial advocacy is to identify the defendant in Court as the person who committed the crime, aside from establishing venue. In this case, as the Court correctly inquired at the time of the defendant's Rule 29 argument, one would think that someone could have identified the defendant in Court.

First, witness Jeff Jean-Pierre, the manager of the property management office at 400 Sunny Isles, could not testify as to who provided his office with the counterfeit driver's license. He testified that he knew a person as Rod or Rob Lesperance, but was never asked by the government to identify the defendant in Court as the person he knew as Rod or Rob Lesperance. By the same token, the government could have asked their agent who testified in the government's case in chief to identify the defendant in Court as the person he investigated or met in the elevator briefly. They never did so. No one identified the defendant in Court as Alfred Davis. The government is confusing the issue of identity with cases where the jury was provided video surveillance of a robbery or a crime being

---

[1]  In his motion, undersigned counsel incorrectly cited *McNutt* as "13 F.3d 334." The correct citation is 908 F.2d 561.  Counsel apologizes to this Court for this error.

5

committed and where the jury could then make their own conclusion as to whether the person in the video was the same person as the defendant. The government also mistakes the argument in *United States v. Jadlowe*, 628 F.3d 1, 24 (1st Cir. 2010), where the Government's agent, who has never met the defendant, testified that the person in the video surveillance was the defendant.

There was no video in this case given to the jury to allow them to decide whether the defendant was the one who committed the crime. The difference between the cases cited in the government's response DE 59 and this case is that there was no video presented to the jury showing Mr. Davis committing a crime, so that the jury could then make their own determination as to whether Mr. Davis is in fact the one who committed a crime.

The government's argument seems to be alluding to the fact that the photo in the driver's license introduced into evidence as Exhibit 3 should be treated the same as the surveillance video in the cases they cite. Specifically, the government states in their response "This case is like a bank robbery where there is a surveillance video and other circumstantial evidence but no eyewitness who can identify the defendant as the person robbing the bank. In such cases, the jury is the factfinder who makes the identification." DE 59:11. The Court should reject this argument.

In *United States v. Burke*, 521 Fed. App'x 720, 723 (11th Cir. 2013), there was substantial circumstantial evidence proving the defendant's guilt: the surveillance video showing the defendant committing the robbery, his statement to a witness that he was about to do a robbery, zip-ties, cell phone tower records, and gloves. The substantial circumstantial evidence in *Burke* cannot compare to this case, where the jury was not shown a video depicting the defendant committing a crime. At best, the government

6

introduced a photo of the driver's license that may resemble Mr. Davis, but no one testified that Mr. Davis submitted that photo or was the same person as Rod Lesperance who might have been seen at the building by Jean-Pierre.

Jeff Jean-Pierre testified that the driver's license introduced into evidence was in his management property's file. He specifically could not testify who provided it to the management company in 2023 and speculated that Yadeline Monteste, an employee at the front office, could have testified as to who provided her the license. The government never called Ms. Monteste as a witness. Had they done so, she could have identified Mr. Davis as the one who submitted the fraudulent driver's license. Mr. Jean-Pierre also could not recall who provided the counterfeit drivers' license to the company in 2019.

The government could have asked Jean-Pierre to identify the person he knew as the tenant of 400 Sunny Isles he referred to as "Rod or Rob Lesperance" if they wanted the jury to make an inference that Alfred Davis was the person who lived at 400 Sunny Isles. They failed to do so.

No one identified Mr. Davis as the person who committed the crime in this case.

3. **The government fails to address the fact that it misled the Court by arguing that Exhibit 15 contained the Defendant's date of birth and concedes that what was introduced in trial was insufficient by attaching items that were never introduced in trial, Exhibits A and B**

In his Motion for New Trial [DE 56], Mr. Davis argued that the government misrepresented the introduced Exhibits to the Court. Specifically, when the Court asked the Government how they could prove that the convictions introduced as government's Exhibits 13 and 15 are those of the defendant, one of the representations the government made to the Court was that the State conviction, Exhibit 15, which was already in evidence

7

over Defense objection, contained the date of birth for Mr. Davis. Defense objected and said it did not. The government insisted that it did. The Court presumably took the government's misrepresentation and allowed the conviction to stay in.

Interestingly enough, the government addresses their misrepresentation in a footnote of their response DE 59:3, and incorrectly claims that they offered the exhibit A they now attached to their response to the Court to review. What the government offered to the Court was the proposed Exhibit 15. The government now wants to claim that the jury exhibits did not contain all the pages from the convictions and wants to have the Court consider things not a part or the record. It should also be noted that On May 13, 2024, two days before trial, the government emailed all the exhibits they planned to introduce to the Defense as directed by the Court. The Exhibit 13 and 15 in that email resembled the exhibits 13 and 15 that ended up being introduced.  The first time the undersigned saw all the 30 pages now attached as Exhibit A was at the time the government filed this response on June 10, 2024. Instead of admitting that not only did they not even provide the 30 pages in the discovery, and that they misrepresented what was introduced into evidence to the Court, the government has now attempted to confuse the Court and attach something that was not a part of the record and disclose it for the first time, post-trial in their response[2].

By now attaching Exhibits A and B to their response [DE 59], the government is essentially admitting that the evidence they introduced in trial was insufficient.  The

---

[2] According to the 30 pages the government attached as Exhibit A, the date the Broward Clerk certified or provided these documents was May 10, 2024, five days before trial, which may explain why the documents were not provided in the discovery.   Only 4 pages of the newly disclosed Exhibit A were attached to the government's May 13, 2024 email to defense as Exhibit 15.

government attached Exhibit A to their response in DE 59, containing 30 pages of the State conviction documents that were never introduced as evidence in trial. What they did introduce in trial as Exhibit 15, only contained 4 pages, none of which had a date of birth of the defendant, despite of their representation to the Court. After the government concluded their case in chief, the defense renewed the objections regarding the conviction introduced and the Court then inquired from the government regarding the convictions introduced into the record as Exhibits 13 and 15, not what might have been in the government's file and not introduced into evidence. The government first misrepresented Exhibit 15 to the Court in trial, led the Court to believe that the defendant's date of birth was on the exhibit entered into evidence, and now conceded that the exhibit introduced in trial was insufficient by attaching 30 pages of the state conviction as Exhibit A. In their filed response DE 59, the government brushed over the fact they misrepresented facts to the Court, and simply attached what they perhaps needed to introduce into evidence, but failed to do so. As the Court is well aware, the appellate record contains documents introduced into evidence, not the documents the government now wishes they introduced into evidence. By attaching Exhibit A to their response, the government has made a functional concession and conceded that that they introduced was insufficient and attempted to now bring in the documents only to show that the Court's concern over the conviction was correct.

## CONCLUSION

For the foregoing reasons, this Court should grant the Defendant's Motion for Judgment of Acquittal, or in the Alternative grant the Defendant a new trial.

9

Respectfully submitted,

BOZANIC LAW, P.A.
17100 Royal Palm Blvd., Suite 1
Weston, FL 33326
Telephone:     954.920.9750
Facsimile:      954.400.0335
E-Mail: Zeljka@bozaniclaw.com

By: ___/s/*Zeljka Bozanic*_____
Zeljka Bozanic
Florida Bar No. 23707

**CERTIFICATE OF SERVICE**

I HEREBY certify that on June 17, 2024, undersigned counsel electronically filed foregoing document with the Clerk of Courts using CM/ECF which will send notification of such filing to all counsel of record.

By: ___/s/*Zeljka Bozanic*_____
Zeljka Bozanic

10