# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 15, 2025

**FILED BY_____AP_____D.C.**

**Aug 15, 2025**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  24-12274-AA
Case Style: USA v. Alfred Davis
District Court Docket No: 1:24-cr-20051-JEM-1

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Clerk's Office Phone Numbers
| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

Enclosure(s)

MDT-1 Letter Issuing Mandate

# In the
# United States Court of Appeals
## For the Eleventh Circuit

————————————

No. 24-12274

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ALFRED LENORIS DAVIS,
a.k.a. Rod Lesperance,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:24-cr-20051-JEM-1

————————————

JUDGMENT

2                                                                          24-12274

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: July 17, 2025

For the Court: DAVID J. SMITH, Clerk of Court

ISSUED AS MANDATE:  August 15, 2025

[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

————————————————

No. 24-12274

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ALFRED LENORIS DAVIS,
a.k.a. Rod Lesperance,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:24-cr-20051-JEM-1

————————————————

Before ROSENBAUM, NEWSOM, and MARCUS, Circuit Judges.

PER CURIAM:

Appellant Alfred Davis presented a false driver's license to a luxury condominium to pass a required background check, so he could become a tenant in one of its units.  A jury convicted him of knowingly, and with the intent to defraud, using a counterfeit access device in violation of 18 U.S.C. § 1029(a)(1), for his actions.

Davis challenges his conviction.  He raises four grounds on appeal.  First, Davis argues that the evidence was insufficient to convict him of access-device fraud, so the district court erred when it denied his motion for judgment of acquittal and motion for new trial.  Second, Davis contends the district court erred when it instructed the jury on the intent-to-defraud element of the crime.  Third, Davis asserts the district court abused its discretion when it admitted evidence of a prior similar act.  Fourth, Davis argues that during the trial, the district court improperly admitted evidence of his prior convictions.

After careful consideration and with the benefit of oral argument, we affirm Davis's conviction.

## I.   Background Facts and Trial Proceedings

In February 2024, a grand jury indicted Davis under 18 U.S.C. § 1029(a)(1) for fraudulent activity relating to his use of a counterfeit access device.  At trial, the government presented evidence that Davis provided a fake driver's license—one with his

picture but another person's name and identifying information—to rent a unit at 400 Sunny Isles in Sunny Isles, Florida.

To put Davis's actions into context, Assistant Property Manager Jeff Jean-Pierre testified that 400 Sunny Isles is a luxury condominium and requires a background check to be performed on all applicants before they may become a resident.  Based on the outcome of the background check—which considers financial history, criminal history, and prior evictions—the condominium association of 400 Sunny Isles decides whether to approve the applicant for tenancy.

Jean-Pierre testified that in 2018, he received application materials from a person who wished to live in Unit 903 of the building—a person who presented himself as Rod Lesperance.  In support of that application, the prospective tenant gave Jean-Pierre a license that bore his photograph and the name "Rod Lesperance."

Jean-Pierre requested a background check for "Rod Lesperance" using the driver's license the prospective tenant provided. The background check returned a credit report, an eviction history reflecting no evictions, and a criminal background check revealing no criminal background.

According to Jean-Pierre, in 2023, the same person attempted to live in another unit at 400 Sunny Isles—Unit 2004.  [**Id. at 75**]  The lessee for the unit was Cynthia Louis, but the occupants were supposed to be Cynthia Louis and "Rod Lesperance."  But before "Lesperance" became an occupant, Jean-Pierre said he'd have to re-submit his application to be a tenant in Unit 2004.  As

4                      Opinion of the Court                   24-12274

part of this process, "Lesperance" provided the same driver's license as he did for Unit 903.  And the condominium association arranged for a background check once again.  But this time, only a criminal background check was done, and that came back clean.

Jean-Pierre explained that if he realized someone provided a fraudulent driver's license, the condominium association would not accept the application.

Special Agent Adam Weisenstine also testified at trial.  He explained that the Federal Bureau of Investigation ("FBI") had been investigating Alfred Davis for financial crimes when it learned that Davis may have been living in Unit 2004 at 400 Sunny Isles.  As part of the investigation, FBI agents visited the condominium and spoke with property management.

Agent Weisenstine later arranged to subpoena records about the occupants of Unit 2004 at 400 Sunny Isles.  The file for Unit 2004 included driver's licenses for Cynthia Louis and "Rod Lesperance," but the Lesperance license had Davis's picture on it.

Agent Weisenstine testified that he reviewed background-check documents and Davis's birth certificate and confirmed that Cynthia Louis was Alfred Davis's mother.

Following its review of the paperwork, the government charged Davis in a one-count indictment with "knowingly, and with intent to defraud, us[ing] a counterfeit access device, that is, a counterfeit Florida driver's license, [with his] conduct affecting interstate and foreign commerce," in violation of 18 U.S.C. § 1029(a)(1).

24-12274                Opinion of the Court                5

Meanwhile, the government continued to request records from 400 Sunny Isles about Unit 903, the prior unit in which Davis had allegedly lived. Later, the property management provided the government with the file. As with Unit 2004, the file for Unit 903 contained a counterfeit driver's license with Davis's picture and the name "Rod Lesperance."

During his testimony, Agent Weisenstine identified the driver's license for "Rod Lesperance" from the Sunny Isles records. He explained that he recognized the photo on the license as that of Alfred Davis because he had been investigating Davis and had seen him in person.

Agent Weisenstine testified that he then checked the Florida Highway Safety and Motor Vehicles records. He discovered that Davis had a driver's license in his own name, with a different driver's license number and his correct date of birth (which differed from the date of birth on the license Davis presented to Jean-Pierre).

Finally, Agent Weisenstine said that he ran a background check on Davis that revealed a state felony conviction and a federal felony conviction. In connection with Weisenstine's testimony, the government entered into evidence certified copies of a 2004 federal criminal judgment against Alfred Davis for bank fraud and conspiracy to commit bank fraud and a 2011 state criminal judgment against Alfred Davis for grand theft.

After the government rested its case, Davis moved for judgment of acquittal. He asserted the government failed to meet the

6                    Opinion of the Court                24-12274

element of "intent to defraud," which he claimed requires that "property or money is taken from somebody." Davis emphasized that the government had not alleged that Davis failed to pay rent, nor had it presented any evidence that the property owner (the owner of Unit 2004) suffered a loss of any money. The district court reserved ruling on Davis's motion for judgment of acquittal, and the trial continued.

The defense ultimately rested without presenting any witnesses. It also moved to strike the exhibits showing Davis's two prior convictions. In support, the defense argued that the government had failed to properly identify the convictions and link them to Davis.

For its part, the government responded that counsel had an opportunity to cross-examine Agent Weisenstine about the authenticity of the documents, that the convictions had Davis's full name and same date of birth, and that Agent Weisenstine obtained certified records of the convictions after running "an NCIC of [Davis] using his Social Security number, date of birth, and personal identifying information." The district court overruled Davis's objection to the evidence of his prior convictions.

After deliberating for about two hours, the jury returned a guilty verdict. Davis filed a renewed motion for judgment of acquittal and a motion for new trial. And the district court denied the motions.

Davis now appeals his conviction.

## II.    Discussion

24-12274                Opinion of the Court                7

A.    The evidence sufficiently supported Davis's conviction for access-device fraud.

Davis first argues that the district court should have granted his motion for judgment of acquittal because he says the government failed to present enough evidence to establish that he had the necessary intent to defraud under 18 U.S.C. § 1029(a)(1). In Davis's view, a person must have intended to obtain a financial gain, cause monetary loss, or take something of value, to violate the statute. And because Davis paid the unit owner rent, he asserts, the government could not establish the element of intent to defraud.

We review de novo a challenge to the sufficiency of the evidence and the denial of a Rule 29 motion for judgment of acquittal. *United States v. Duldulao*, 87 F.4th 1239, 1251 (11th Cir. 2023); *United States v. Chafin*, 808 F.3d 1263, 1268 (11th Cir. 2015). We will uphold the district court's denial of a motion for judgment of acquittal if a reasonable jury could conclude the evidence establishes the defendant's guilt beyond a reasonable doubt. *United States v. Holmes*, 814 F.3d 1246, 1250 (11th Cir. 2016). We view the facts, and draw all reasonable inferences from them, in the light most favorable to the government. *United States v. Clay*, 832 F.3d 1259, 1293 (11th Cir. 2016). If "any reasonable construction of the evidence . . . would have allowed the jury to find the defendant guilty beyond a reasonable doubt," we won't disturb the verdict. *Id.* at 1294 (citation and internal quotation marks omitted). Nor must the evidence exclude every reasonable hypothesis of innocence for a reasonable jury to find guilt beyond a reasonable doubt. *United States v. Cruz-Valdez*, 773 F.2d 1541, 1545 (11th Cir. 1985) (en banc).

8                          Opinion of the Court                    24-12274

Next, we turn to Davis's statute of conviction—18 U.S.C. § 1029(a)(1), the access-device-fraud statute. To secure a conviction under that law, the government must show that the defendant "knowingly and *with intent to defraud* produce[d], use[d], or traffic[ked] in one or more counterfeit access devices." 18 U.S.C. § 1029(a)(1) (emphasis added). An "access device" means "any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or . . . other means of account access that can be used, alone or in conjunction with another access device, *to obtain money, goods, services, or any other thing of value.*" *Id*. § 1029(e)(1) (emphasis added).

Here, Davis does not dispute that a fake driver's license qualifies as an access device. The parties also concede that the conduct affected interstate commerce.

As for "intent to defraud," we've previously addressed the same intent requirement in the context of another subsection of this statute: § 1029(a)(2). *See United States v. Klopf*, 423 F.3d 1128 (11th Cir. 2005). Subsection 1029(a)(2) makes it a crime to "knowingly and with intent to defraud traffic[] in or use[] one or more unauthorized access devices during any one-year period, and by such conduct obtain[] anything of value aggregating $1,000 or more during that period." 18 U.S.C. § 1029(a)(2). By comparison, subsection 1029(a)(1) outlaws "knowingly and with intent to defraud produc[ing], us[ing], or traffic[king] in one or more counterfeit access devices." *Id*. § 1029(a)(1). We conclude that the parallel

nature of these provisions requires us to construe the term "intent to defraud" the same way for both subsections.

In *Klopf*, we noted that "[i]ntent to defraud has *often* been defined as the specific intent to deceive *or* cheat, for the purpose of either causing some financial loss to another, or bringing about some financial gain to one's self." *Klopf*, 423 F.3d at 1240 (emphases added) (citation and internal quotation marks omitted). But our holding there showed the limits of our statement.

In *Klopf*, the defendant argued that the government failed to prove he acted with the required "intent to defraud" to support his conviction for use of unauthorized access devices under 18 U.S.C. § 1029(a)(2). *Id.* There, the defendant used fraudulent driver's licenses with his picture and other individuals' identifying information to obtain credit cards and then used them to make purchases and withdrawals. *Id.* at 1232, 1240. After engaging in transactions with the cards, he made payments, even though he took the credit cards out in others' names. *Id.* at 1240. The defendant contended that his repayment efforts meant the government couldn't prove he "inten[ded] to defraud." *Id.*

We disagreed. *Id.* We determined that the government established the necessary intent to defraud because the defendant "intended to deceive the banks into believing that he was the individual named on the various credit cards issued to him." *Id.* And the credit cards were unauthorized access devices under § 1029(e)(3) because he had "obtained [them] with intent to defraud." *Id.* Particularly relevant here, we explained that it didn't matter that the

10                        Opinion of the Court                    24-12274

defendant later made payments on the credit cards because, when he applied for each credit card, "he intended to defraud the banks by representing to them that they were dealing with persons other than himself." *Id.*

*Klopf* requires the conclusion here that sufficient evidence supports the jury's finding that Davis intended to defraud the luxury apartment complex at 400 Sunny Isles when he used a counterfeit driver's license to falsely represent himself to be Lesperance to rent an apartment. *See id.*; 18 U.S.C. § 1029(a)(1). The deceptive use of the name "Rod Lesperance" resulted in a clean background check that Davis would not have gotten in his own name. And that allowed Davis to gain access to Unit 2004, which he otherwise could not have.

Turning to Davis's contention that his payment of rent negates any criminal intent, we disagree. Under *Klopf*'s rationale, it makes no difference that Davis paid the rent for Unit 2004. Any payment *after* he used the counterfeit license to obtain what he wanted does not absolve him of criminal liability under the statute. Rather, what matters is that, at the time he applied, Davis intended to defraud 400 Sunny Isles by representing to it that he was someone he wasn't—Rod Lesperance. *See Klopf,* 423 F.3d at 1240. As *Klopf* makes clear, the access-device fraud statute does not require a financial loss. It merely requires the defendant's intent to defraud. And the jury could reasonably infer Davis's intent to defraud from circumstantial evidence. *See United States v. Perez*, 698 F.2d 1168, 1170 (11th Cir. 1983).

24-12274               Opinion of the Court                    11

Davis invokes a Ninth Circuit decision interpreting other subsections of the access-device-fraud statute—Sections 1029(a)(3) and (4). *See United States v. Saini*, 23 F.4th 1155, 1163 (9th Cir. 2022). In *Saini*, the Court explained that the "plain and ordinary" meaning of the statute required an "intent to deceive *and* cheat," which meant the government was required to prove that the defendant had the intent to "deprive a victim of money or property by deception." *Id.* at 1158, 1160. In passing, the Ninth Circuit also commented that its interpretation of the statute "align[ed] with precedential Eleventh Circuit case law, which appears to require an intent to deceive for the purpose of causing another to suffer financial loss or obtaining something valuable." *Id.* at 1162 (citing *Klopf*, 423 F.3d at 1240).

Davis's invocation of *Saini* does not move the needle. First, this out-of-circuit case is not binding on us. Second, our own caselaw recognizes that the phrase "intent to defraud" as § 1029(a) employs it refers to the specific intent to "deceive *or* cheat" and not the specific intent to "deceive *and* cheat." *See Klopf*, 423 F.3d at 1240 (emphasis added). Third, even if we were to apply the Ninth Circuit's rationale, we would still conclude that sufficient evidence of Davis's intent to defraud existed. In *Saini*, the Court required the government to show the defendant's intent to deprive a victim of money or property by deception. *Saini*, 23 F.4th at 1160-61. Here, Davis used deception to induce another person to transfer a right in property—Unit 2004. So Davis obtained something of value—

12                    Opinion of the Court                    24-12274

property—as a result of his deception.  As a result, even if we apply *Saini*, Davis cannot prevail.[1]

In sum, sufficient evidence supports the jury's decision that Davis had the intent to defraud.  So the district court did not err in denying Davis's motions for judgment of acquittal and new trial. *See Holmes*, 814 F.3d at 1250.

B.    <u>The district court did not err when it gave its jury instruction on intent to defraud.</u>

---

[1] Davis relies on the Court's pattern jury instruction for Hobbs Act Racketeering, which requires a defendant to cause another person to "part with property" and then, in turn, defines "property" as "includ[ing] money, other tangible things of value, and intangible rights that are a source or part of income or wealth." *Eleventh Circuit Pattern Jury Instructions (Criminal Cases)*, Instruction No. O70.1.  Based on this definition of property, Davis claims his status as a lessee of Unit 2004 "was not an intangible 'thing of value,' because it was not part of income, or wealth."  Rather, he asserts that his status imposed a "legal obligation to pay rent, which can be a source of indebtedness, but not a source of income or wealth."

We reject Davis's argument.  First, Hobbs Act Racketeering is not at issue here, so the definition of "property" in the pattern instruction is inconsequential.  Second, § 1029(a)(1) does not require the taking of property nor does it define "property" at all in the statute.  Instead, § 1029(a)(1) requires only that the defendant, "knowingly and with intent to defraud produce[], use[], or traffic[] in one or more counterfeit access devices" to "obtain money, goods, services, or any other thing of value."  18 U.S.C. §§ 1029(a)(1), (e).  Property rights and leasehold interests are "thing[s] of value."  Finally, Davis's contention that the term "property" refers to "rights that are a source or part of income and wealth" is unpersuasive.  Unit 2004 *was* a source of income to its owner, but as we've explained, under our own caselaw, it makes no difference that Davis paid the rent on the unit. *See Klopf*, 423 F.3d at 1240.

Davis next argues that the district court erred when it failed to give his requested instruction on intent to defraud—that a "person acts with intent to defraud when they have the intent to deceive and cheat, which means they have the intent to deprive the victim of money or property through deception." The district court rejected the request, remarking that Davis's proposed instruction was "not the law." Instead, the court decided to go with the Eleventh Circuit's Pattern Jury Instruction (Criminal Cases) O41.1 and instructed the jury that "[t]o act 'with intent to defraud' means to act with intent to deceive *or* cheat, usually, for personal financial gain or to cause financial loss to someone else." Davis contends that, in the context of this case, the pattern instruction was incorrect and the district court's use of the word "usually" was vague and misleading. We disagree.

We review de novo the legal correctness of a jury instruction, and we review for abuse of discretion the district court's refusal to give a requested instruction. *United States v. Moore*, 115 F.4th 1370, 1374 (11th Cir. 2024); *United States v. Hill*, 643 F.3d 807, 850 (11th Cir. 2011). A district court abuses its discretion in refusing to give a requested instruction when the instruction was (1) substantially correct, (2) not covered by other instructions that were given, and (3) so vital that the failure to give the requested instruction seriously impaired the defendant's ability to defend himself. *United States v. Horner*, 853 F.3d 1201, 1208 (11th Cir. 2017). If the instruction that the court gives accurately reflects the law, the district court has wide discretion to determine the wording of the instruction. *Id.*

14                         Opinion of the Court                    24-12274

We examine jury charges as a whole to decide whether the entire jury charge adequately instructed the jury about the issues in the case.  *Id.*  We reverse "only if we are left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations."  *Hall v. Merola*, 67 F.4th 1282, 1290 (11th Cir. 2023) (citation omitted).  And if we find an error, we review for harmless error.  *United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012).  "An error is harmless if the reviewing court is satisfied beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."  *Id.* at 1197 (citation and internal quotation marks omitted).

This Circuit's Pattern Jury Instruction for 18 U.S.C. § 1029(a)(1) includes an instruction for the meaning of "intent to defraud."  *Eleventh Circuit Pattern Jury Instructions (Criminal Cases)*, Instruction No. O41.1.  The district court gave that instruction in this case.  Still, pattern jury instructions are not binding authority; only precedential caselaw is.  *Moore*, 115 F.4th at 1374.  So here, the mere fact that the instruction was a pattern instruction does not carry the day.  But as long as the pattern jury instruction accurately reflected the law and did not mislead the jury, we will not find an abuse of discretion by the district court.

Not surprisingly, the question of the correctness of the jury instruction on the intent-to-defraud element overlaps with the first issue we've addressed.  Here, Davis's chief complaint is the district court's use of the word "usually" in the jury instruction:  that "to act 'with intent to defraud' means to act with the intent to deceive

24-12274                    Opinion of the Court                    15

or cheat, *usually* for personal financial gain or to cause financial loss to someone else." We reject that challenge because the instruction reflected a correct statement of the law.

As we've explained, in *Klopf* we recognized that intent to defraud has "*often* been defined as 'the specific intent to deceive or cheat, for the purpose of either causing some financial loss to another, or bringing about some financial gain to one's self.'" *Klopf*, 423 F.3d at 1240 (emphasis added). And we've never, in a precedential decision, held that proof of an intent to cause financial loss to another or financial gain to oneself is *always* required to meet the intent-to-defraud element under 18 U.S.C. § 1029(a). So Davis's proposed jury instruction— that a "person acts with intent to defraud when they have the intent to deceive and cheat, which means they have the intent to deprive the victim of money or property through deception"—incorrectly states the law. Davis's proposed instruction also incorrectly uses the phrase "deceive and cheat" instead of "deceive or cheat," which we used in *Klopf*. *Id*. at 1240.

In contrast, the district court's use of the word "usually" in the jury instruction tracks with our use of the word "often" in *Klopf*, which binds us. In fact, the word "usually" as contained in the instruction could have arguably placed a more rigorous burden on the government because the word "usually" means "customarily, ordinarily," but the word "often" means only "frequently" but not customarily. *See Usually*, *Merriam-Webster Dictionary*, https://merriam-webster.com/dictionary/usually [https://perma.cc/MDB6-H2VM];   *Often,   Merriam-Webster*

16                      Opinion of the Court                    24-12274

*Dictionary*,          https://merriam-webster.com/dictionary/often
[https://perma.cc/9DYU-VYEL].

Regardless, when we used the qualifier "often" in *Klopf*, we signaled that the intent to defraud is often, but not always, aimed at causing some financial loss to another.  And a natural reading of the text comports with that understanding.  As we've noted, 18 U.S.C. § 1029(e)(1) refers to "goods, services, or any other thing of value."  So Davis's contention that the jury instruction should have included a statement that a defendant must have the intent to deprive a victim of money or property to satisfy § 1029(a)(1) is not a correct statement of the law.

In sum, the district court was right to reject Davis's proposed jury instruction as an incorrect statement of the law.  And the Eleventh Circuit Pattern Jury Instruction that the district court gave followed binding precedent, so the court did not abuse its discretion. *See United States v. Bell*, 112 F.4th 1318, 1336-37 (11th Cir. 2024) (court found no abuse of discretion where the pattern jury instructions contained no errors and adequately communicated the elements of fraud).

C.    <u>The district court did not abuse its discretion when it allowed evidence of a prior similar act under Rule 404(b) of the Federal Rules of Evidence.</u>

Davis next asserts that the district court erred when it admitted evidence of his 2018 application to reside in Unit 903 at 400 Sunny Isles.  He emphasizes that the indictment charged him with access-device fraud relating to his occupancy of only Unit 2004, not

24-12274                Opinion of the Court                17

his use of Unit 903. The district court allowed the evidence under Federal Rule of Evidence 404(b), after it found that the 2018 application to reside in Unit 903 showed Davis's motive and method of operation.

Davis argues evidence of a prior wrong act is not admissible under Rule 404(b) "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." He asserts the government introduced the evidence about Unit 903 for this prohibited purpose, based on the government's claim during opening statements at trial that the evidence would show that Davis "didn't just do this once. He did it twice, the exact same apartment building, once in 2018, once in 2023."

We review the district court's admission of evidence under Rule 404(b) for abuse of discretion. *United States v. Akwuba*, 7 F.4th 1299, 1313 (11th Cir. 2021); *United States v. Culver*, 598 F.3d 740, 747 (11th Cir. 2010). This standard "allow[s] a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *Akwuba*, 7 F.4th at 1313 (quoting *United States v. Kelly*, 888 F.2d 732, 745 (11th Cir. 1989)).

Rule 404(b) prohibits the introduction of evidence of any other "crime, wrong, or act" to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But the rule expressly allows such evidence for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge,

18                        Opinion of the Court                    24-12274

identity, absence of mistake, or lack of accident."    Fed. R. Evid.404(b)(2).

Rule 404(b) "is a rule of inclusion, and . . . accordingly 404(b) evidence, like other relevant evidence, should not be lightly excluded when it is central to the prosecution's case." *United States v. Kapordelis*, 569 F.3d 1291, 1313 (11th Cir. 2009) (citation and internal quotation marks omitted, alteration in original). Rule 404(b) does not apply when evidence of a prior offense is intrinsic to the charged offense. *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). Extrinsic evidence, on the other hand, falls under Rule 404(b).

We apply a three-part test to determine the admissibility of 404(b) evidence: (1) the evidence must be relevant to an issue other than the defendant's character; (2) sufficient evidence must be presented for a jury to find by a preponderance of the evidence that the defendant committed the extrinsic act; and (3) undue prejudice must not substantially outweigh the probative value of the evidence, and the evidence must satisfy Federal Rule of Evidence 403. *Id.*

   1.      *The Unit 903 evidence could be intrinsic evidence.*

We conclude that the district court did not abuse its discretion when it allowed the admission of evidence relating to Davis's occupancy of Unit 903. For starters, the evidence arguably is intrinsic evidence that falls outside Rule 404(b) because it was necessary to complete the story of Davis's crime or at least was evidence that is inextricably intertwined with the evidence of the charged

offense. *See Edouard*, 485 F.3d at 1344 (explaining that "[e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive[,] and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury."). Put simply, because Davis used the fake driver's license in 2018 for Unit 903, he *had* to use it again in 2023 for Unit 2004, when he applied for a different condominium unit in the same building.

2.     *If the Unit 903 evidence is extrinsic, it meets* Edouard*'s three-part test.*

But even assuming the Unit 903 evidence is not intrinsic, it still falls within Rule 404(b)'s stated exception and meets the three-part test *Edouard* sets forth.

First, the evidence regarding Unit 903 is relevant to an issue other than Davis's character. Here, Davis continuously challenged the sufficiency of the government's evidence that he was the individual who used the fake driver's license for Unit 2004 in 2023. So Davis placed his identity directly at issue. And because witness testimony identified Davis as the person who submitted the same driver's license for Unit 903, that evidence was directly relevant to establish Davis's identity.

Evidence relating to Unit 903 also established Davis's modus operandi. After all, the applications for both Units 2004 and 903 were more than just similar, they were identical. Davis not only

20                     Opinion of the Court                     24-12274

used the same false name, but he also used the same fake driver's license with the same picture on it and the same date of birth. That was what allowed Davis to apply for residency in two different units in the same apartment complex.

Second, more than enough evidence existed to establish by a preponderance of the evidence that Davis committed the prior act relating to Unit 903 back in 2018. Sunny Isles Assistant Property Manager Jeff Jean-Pierre testified to Davis's knowledge of the application and background-check process. Jean-Pierre also explained that he took the fake driver's license from Davis during the application process in 2018 and that he saw the person he knew as Rod Lesperance at the condominium building. FBI Agent Adam Weisenstine later identified Davis as the person whose picture was on the fake driver's license. Taken together, this testimony establishes by a preponderance of the evidence that Davis committed the act in question—presenting the same false driver's license when he applied to reside in Unit 903.

Third, undue prejudice didn't substantially outweigh the probative value of the evidence relating to Unit 903. For this analysis, we look to Rule 403 of the Federal Rules of Evidence.

Rule 403 states that district courts "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Rule 403 is an extraordinary remedy that courts should employ "only sparingly

24-12274                Opinion of the Court                21

since it permits the trial court to exclude concededly probative evidence." *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006) (citation and internal quotation marks omitted).  Accordingly, we view the disputed evidence "in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Id*. (citation omitted).

When determining whether the danger of unfair prejudice substantially outweighs the probative value of extrinsic-act evidence, we engage in a "common sense assessment of all the circumstances surrounding the extrinsic evidence." *United States v. Brown*, 587 F.3d 1082, 1091 (11th Cir. 2009) (citation and internal quotation marks omitted).  To conduct this analysis, we consider the following factors:  the overall similarity of the extrinsic and charged offenses, the temporal proximity of the extrinsic and charged offenses, and the government's need for the evidence.  *Id*. We also consider whether it appeared when trial began that the defendant would contest the issue for which the evidence was to be used.  *United States v. Ellisor*, 522 F.3d 1255, 1268 (11th Cir. 2008). We have not adopted a bright-line rule about the temporal proximity of the prior act, and the defendant bears a heavy burden if the basis for his challenge is that the extrinsic act is too remote to be probative.  *United States v. Matthews*, 431 F.3d 1296, 1311 (11th Cir. 2005) (per curiam); *United States v. Pollock*, 926 F.2d 1044, 1048 (11th Cir. 1991).

Here, the overall similarity of the 2018 and 2023 offenses is striking.  In fact, except for the time they occurred, the acts are

nearly identical. In both instances, Davis used the same fake name, the same picture (Davis's) on the same fake driver's license, and the same false birth date. Not only that, but Davis applied for both units in the same building with the same condominium association. *See Ellisor*, 522 F.3d at 1268 (noting similarities between incidents); *see also United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005) (per curiam) ("A similarity between the other act and a charged offense will make the other offense highly probative with regard to a defendant's intent in the charged offense.")

And the government needed the evidence about the 2018 application to assist in establishing the identity of the person who committed the 2023 offense. As we've noted, Davis denied that he was the one who used the counterfeit driver's license in 2023, so the evidence about the application for Unit 903—where Jean-Pierre could identify the applicant—was necessary to assist the jury with identifying the applicant for Unit 2004.

As for temporal proximity, although roughly five years separated the offenses, we have "refrained from adopting a bright-line rule with respect to temporal proximity." *Matthews*, 431 F.3d at 1311. Indeed, in *United States v. Lampley*, 68 F.3d 1296, 1300 (11th Cir. 1995), we upheld the admission of Rule 404(b) evidence where the other acts happened fifteen years earlier than the charged offense.

Finally, to the extent that there was any prejudice, the district court mitigated it by issuing a limiting instruction that the jury could consider the prior acts evidence only to evaluate Davis's

identity as the one charged in the current case.  The district court instructed the jury, "You may not convict a person simply because you believe that [he] may have committed an act in the past that is not charged in the indictment.  So I hope you understand that any evidence of any prior conduct is only shown for the purpose of either the intent or the state of mind, whether a motive or opportunity to commit the crime, or whether the defendant acted according to a plan or in preparation to commit a crime."  And the court explained, "If you find the defendant committed the allegedly similar acts, you may use that evidence to help you decide whether the similarity between those acts and the one charged in this case suggest that the same person committed all of them," but the court told the jury it could "not consider this evidence for any other purpose."

We have previously found this type of limiting instruction can reduce the risk of undue prejudice.  *Ramirez*, 426 F.3d at 1354; *see also United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1225 (11th Cir. 1993) (finding where the district court issued a limiting instruction, "any unfair prejudice possibly caused by its introduction was mitigated").  We presume the jury follows limiting instructions.  *Hill*, 643 F.3d at 829.

Considering the record as a whole, then, we conclude the district court did not abuse its discretion in admitting the 2018 application relating to Unit 903.  The evidence was relevant to a non-character issue, the government presented sufficient evidence to support a jury finding by a preponderance of the evidence that

24                     Opinion of the Court                     24-12274

Davis committed the extrinsic act, and undue prejudice did not substantially outweigh the probative value of the evidence. *See Kapordelis*, 569 F.3d at 1313; *Edouard*, 485 F.3d at 1344. Plus, the district court mitigated any risk of undue prejudice by issuing a limiting instruction to the jury that it should consider the prior-act evidence only to evaluate Davis's identity as the individual charged in the current case. *See Ramirez*, 426 F.3d at 1354; *Diaz-Lizaraza*, 981 F.2d at 1225.

D.     The district court did not abuse its discretion in admitting evidence of Davis's prior convictions.

Finally, Davis asserts the district court abused its discretion in admitting evidence of his two prior convictions. In particular, FBI Agent Weisenstine testified that he ran a background check on Davis, which showed that Davis had a prior state felony conviction and a prior federal felony conviction. During Agent Weisenstine's testimony, and over the objection of defense counsel, the government admitted into evidence paperwork reflecting both convictions: one for bank fraud and conspiracy to commit bank fraud, and the other for grand theft.

Davis challenges the admission of the convictions. He says it was improper because the government failed to present fingerprint evidence linking Davis to the prior convictions. Davis also points out that one of the exhibits did not list his date of birth. We conclude that the district court didn't abuse its discretion in admitting this evidence.

We review evidentiary rulings for an abuse of discretion and will "defer to the district court's decisions to a considerable extent." *Akwuba*, 7 F.4th at 1313 (alteration adopted, citation and internal quotation marks omitted). Rules 901 and 902 of the Federal Rules of Evidence guide us under the circumstances. A party can authenticate a document through extrinsic evidence, as Federal Rule of Evidence 901 provides, or a document can be self-authenticating under Federal Rule of Evidence 902.

Under Rule 901, a proponent must produce evidence "sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). To authenticate a document through extrinsic evidence, a party need present only "some competent evidence . . . to support authentication." *United States v. Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990) (citation omitted). And that evidence can be purely circumstantial. *Id.* Evidence may be authenticated by its "appearance, contents, substance, internal patterns, or other distinctive characteristics . . . taken together with all the circumstances." Fed. R. Evid. 901(b)(4). A district court has discretion to determine authenticity, and we will not disturb the admission of evidence "absent a showing that there is no competent evidence in the record to support it." *United States v. Lanzon*, 639 F.3d 1293, 1301 (11th Cir. 2011) (citation and internal quotation marks omitted).

Not all documents require extrinsic authentication. Some are self-authenticating. For example, Rule 902(4) provides that certified copies of public records are self-authenticating if the copy is

26                        Opinion of the Court                  24-12274

certified as correct by a certificate that complies with Rule 902(1). Fed. R. Evid. 902(4).  And Rule 902(1) makes a document bearing a seal of any state, or of a political subdivision, department, agency, officer, or agency thereof, if it has a signature purporting to be an execution or attestation, to be self-authenticating.  Fed. R. Evid. 902(1).

Here, the district court did not abuse its discretion by admitting Davis's two prior convictions.  The government adequately established through both witness testimony and self-authenticating documents that the prior convictions were Davis's.  *See Akwuba*, 7 F.4th at 1313; *Hawkins*, 905 F.2d at 1493; *Lanzon*, 639 F.3d at 1301.

First, both the state and federal convictions meet the requirements of Rule 902(4), so they are self-authenticating.  Both contain the seal of the respective court and both are signed by a custodian of the original document.  *See AMFAC Distribution Corp. v. Harrelson,* 842 F.2d 304, 307 (11th Cir. 1988) (per curiam) (noting that the stamp found on the back of the last page of a judgment satisfied these requirements and therefore, the judgment was admissible under Rule 902 of the Federal Rules of Evidence).

Second, FBI Agent Weisenstine's testimony about how he got the documents sufficiently authenticated them under Rule 901. In particular, Agent Weisenstine testified that he obtained a check Davis made out from a Navy Federal Credit Union account to Miami 2023 at 400 Sunny Isles, LLC, with the memo line stating, "400 Sunny Isles, Unit 2004."  That led Agent Weisenstine to Unit 2004 in 400 Sunny Isles, where Davis's mother Cynthia Louis and

24-12274                Opinion of the Court                27

another person by the name of "Rod Lesperance" resided. Agent Weisenstine reviewed the file for Unit 2004 and found a driver's license with the name "Rod Lesperance." Because Agent Weisenstine had previously seen Davis in person, he recognized the picture on the license as Davis. So then Agent Weisenstine ran a background check on Davis, and that was how he learned of the convictions that he procured copies of. Agent Weisenstine also testified he obtained Davis's bank records, his DMV records, and his birth certificate, all of which aided him in completing the background check.

And when the admissibility of the convictions came up during trial, the government pointed out that the convictions bear Davis's full name on them and at least the state conviction has the same date of birth. Plus, Agent Weisenstine obtained certified records of the convictions after running "an NCIC of [Davis] using his Social Security number, date of birth, and personal identifying information."

This evidence was enough to allow the district court to find, within its discretion, that the two certified convictions were properly authenticated and to admit them at trial. The witness testimony, together with the documents, established that the prior convictions introduced at trial were Davis's. *See Lanzon*, 639 F.3d at 1301. The government did not need to link Davis to the convictions through fingerprint evidence as Davis argues.

### III.    Conclusion

28                  Opinion of the Court                  24-12274

For all the reasons we've explained, we affirm the district court's evidentiary rulings and Davis's conviction for access-device fraud.

**AFFIRMED**.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 17, 2025

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 24-12274-AA
Case Style: USA v. Alfred Davis
District Court Docket No: 1:24-cr-20051-JEM-1

Opinion Issued

Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing

The time for filing a petition for panel rehearing or rehearing en banc is governed by 11th Cir. R. 40-2. Please see FRAP 40 and the accompanying circuit rules for information concerning petitions for rehearing. Among other things, **a petition for rehearing must include a Certificate of Interested Persons**. See 11th Cir. R. 40-3.

Costs

No costs are taxed.

Bill of Costs

If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees

The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion